BEEZER, Circuit Judge.
This appeal involves the awarding of attorney’s fees to shippers who successfully sue carriers of household goods under the Carmack Amendment. The appellants in this case are moving companies. They assert that there is no statutory basis to support the district court’s award of an attorney’s fee to shippers who brought a court action without first engaging in available arbitration. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
I
The relevant facts are not in dispute. Plaintiffs Edward and Susan Campbell contracted with defendants Kachina Moving and Storage, Inc., Mayflower Transit, Inc., Gates Moving and Storage, Inc. and Allied Van Lines, Inc. (collectively “carriers”) to transport their household goods from Arizona to Florida. The goods were damaged during the move. The plaintiffs sued the carriers in state court, and the defendants removed the suit on the basis of federal question jurisdiction arising under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. See 28 U.S.C. §§ 1337, 1445(b). A jury in the district court found in favor of the plaintiffs, awarding over $15,000 in compensatory and $31,000 in emotional distress damages.
The district court granted the plaintiffs’ motion for an attorney’s fee of approximately $15,400 (one-third of the total award), plus costs. The only issue appeal *620 ed is the plaintiffs’ statutory entitlement to that fee.[1] We review this question de novo. Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 617 (9th Cir.2003):
II
The Carmack Amendment to the Interstate Commerce Act establishes motor carrier liability for “the actual loss or injury to the property” a carrier transports. 49 U.S.C. § 14706(a)(1); see Ward v. Allied Van Lines, Inc., 231 F.3d 135, 138 (4th Cir.2000). The Carmack Amendment preempts many state and common law claims against carriers in an effort to create a “national scheme of carrier liability for goods damaged or lost during interstate shipment.” Ward, 231 F.3d at 138 (internal quotation marks omitted); see Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970 F.2d 609, 613 (9th Cir.1992).
We are required to consider 49 U.S.C. § 14708, which in part states (emphasis added):
(a) Offering shippers arbitration. — [A] carrier providing transportation of household goods ... must agree to offer in accordance with this section to shippers of household goods arbitration as a means of settling disputes between such carriers and shippers
(b) Arbitration requirements.—
(6) Requests. — The carrier must riot require the shipper to agree to utilize arbitration prior to the time that a dispute arises....
(8) Deadline for decision. — The arbitrator must, as expeditiously as possible but at least within 60 days of receipt of written notification of the dispute, render a decision based on the information gathered [with exceptions]....
(d) Attorney’s fees to shippers. — In any court action to resolve a dispute between a shipper of household goods and a carrier providing transportation or service ... the shipper shall be awarded reasonable attorney’s fees if—
(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later;
(2) the shipper prevails in such court action; and
(3)(A) a decision resolving the dispute was not rendered through arbitration under this section within the period provided under subsection (b)(8) of this section or an extension of such period under such subsection;, or
(B) the court proceeding is to enforce a decision rendered through arbitration under this section and is instituted after the period , for performance under such decision has elapsed.
The parties’- dispute centers on the meaning of the attorney’s fee provisions in subsection (d). The carriers assert that these provisions presume participation in the arbitration program described in the rest of Section 14708. The shippers argue that the statute contains no such limitation. We agree with the shippers.
Ill
Our analysis begins, as it must, with the text of the statute in question. Azarte v. Ashcroft, 394 F.3d 1278, 1285 (9th Cir.2005). Under the “plain meaning” *621 rule, “[w]here the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.” Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 878 (9th Cir.2001) (en banc) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).
This principal rule of statutory construction guides our examination of Section 14708’s attorney’s fee provisions. It also leads to our ultimate conclusion: simply put, nothing in § 14708(d) limits attorney’s fees to shippers who engage in arbitration. The subsection applies to “any court action” involving disputes between a shipper of household goods and a carrier, and entitles shippers to attorney’s fees if they meet the first two requirements of (d)(1) and (d)(2) (timely submitting a claim and prevailing in court), and are not barred by (d)(3) — which merely excludes those claims in which a timely arbitration decision is reached and does not necessitate court enforcement. In other words, (d)(3) prevents shippers from receiving attorney’s fees if the arbitration program “works” as intended by swiftly resolving the dispute. It has no effect on shippers, such as the Campbells, who did not engage in arbitration.
We are mindful of the need to construe a statute as a whole. See Children’s Hosp. & Health Ctr. v. Belshe, 188 F.3d 1090, 1096 (9th Cir.1999). Like the carriers, we read the attorney’s fee provisions in light of the arbitration program with which they share Section 14708. Our interpretation recognizes that receiving a timely arbitration decision affects a shipper’s eligibility for an attorney’s fee under (d)(3), and that courts must consult the time period in (b)(8) to establish whether an arbitration decision qualifies as timely. With this understanding in mind, we see no tension between our interpretation of the attorney’s fee provisions and the arbitration program.
The carriers read the interplay of (b)(8) and (d)(3)(A) differently. They argue that refusal to invoke arbitration prevents (b)(8)’s time period from beginning to run, and therefore precludes (d)(3)(A) from ever being satisfied. But nothing in the text of (d)(3)(A) conditions eligibility upon the happening of a certain event; rather, a shipper satisfies (d)(3)(A) as long as a specific event does not occur, namely the rendering of an arbitration decision within a certain period of time. Because there was no arbitration decision in the Campbells’ dispute, (d)(3)(A) poses no barrier to the award of an attorney’s fee.
The reliance of other courts on Section 14708’s title to support an alternative interpretation does not convince us otherwise. See Yakubu v. Atlas Van Lines, 351 F.Supp.2d 482, 490-91 (W.D.Va.2004) (citing Collins Moving & Storage Corp. v. Kirkell, 867 So.2d 1179, 1183-84 (Fla.Ct. App.2004)). Section 14708 may be entitled “Dispute settlement program for household goods carriers,” but that does not give us free rein to ignore the plain language of subsection (d). As the Supreme Court explained in Brotherhood of Railroad Trainmen v. B & O Railroad Co., 331 U.S. 519, 528-29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947) (internal citations omitted):
That the heading of [a section] fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact.... [T]he title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretive purposes, they are of use only when it sheds light on some ambiguous word or phrase.
Accord INS v. St. Cyr, 533 U.S. 289, 308-309, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) *622 (quoting Trainmen). There is nothing ambiguous about the text in question here. Section 14708(d) is entitled “Attorney’s Fees to shippers” and expressly applies to “any court action to resolve a dispute between a shipper of household goods and a carrier providing transportation or service .It does not state that the subsection applies only to court actions pursued after first invoking arbitration; adding such a limitation may be easy enough, but that is the province of Congress, not this court.
The carriers, however, argue that our straightforward reading of the text fails to properly respect Congress’s intent to encourage arbitration. As a remedy, the carriers urge supplementing the statute’s three enumerated conditions for attorney’s fee eligibility by reading in a fourth, unstated prerequisite that shippers first invoke arbitration. “We have long held that there is a strong presumption that the plain language of [a] statute expresses congressional intent, rebutted only in rare and exceptional circumstances, when a contrary legislative intent is clearly expressed.” United States v. Tobeler, 311 F.3d 1201, 1203 (9th Cir.2002) (internal citation and quotation marks omitted). Section 14708(d) does not present such an exceptional circumstance. Given the ease with which Congress expressly listed three eligibility criteria, we see no reason why Congress would bury a fourth implicitly within the statute. We decline to add a condition that is conspicuously absent from the text when we perceive no inconsistency in the statute as it is written.
We áre particularly hesitant to depart from the statute’s text in situations like the one here, in which we can only attempt to glean the specific details of Congress’s intent by examining the limited legislative history of the act in question. The parties can — and do — argue about the proper object of this legislation and the effect of a rule that allows shippers to bypass arbitration without compromising their ability to receive attorney’s fees. Perhaps, as the carriers argue, a rule that obligated shippers to submit to arbitration in order to recover attorney’s fees would more effectively reduce the number of shipper-carrier lawsuits; then again, perhaps requiring carriers to agree to binding arbitration of all claims over $5,000 would do so as well. See 49 U.S.C. § 14708(b)(6).[2]
Such speculation is beside the point. We are not prepared to second-guess Congress’s chosen method for adopting a legislative program that may or may not provide the best means to effectuate some underlying congressional goal. Lacking overwhelming evidence to suggest that the statute’s language is at odds with a clearly expressed legislative intent to the contrary, we defer to the plain meaning of the text actually adopted by Congress. See Tobeler, 311 F.3d at 1203.
IV
“[TJime and again,” the Supreme Court has instructed that “courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d *623 391 (1992) (internal quotation marks and citations omitted). Such is the occasion here. Congress unambiguously authorized the awarding of attorney’s fees to shippers of household goods who meet three express conditions. None of those conditions require a shipper to first invoke arbitration. We decline the carriers’ invitation to extract an implicit fourth requirement by delving further into this statute’s inconclusive legislative history.
There is no dispute that the Campbells (1) timely submitted a claim for the loss of their household goods, (2) prevailed in a court action to resolve this dispute, and (3) had no arbitration decision rendered in this dispute. The text of 49 U.S.C. § 14708(d) requires nothing more for awarding an attorney’s fee.
AFFIRMED.

. Neither party questions the general "American rule,” which dictates that, "absent explicit congressional authorization,” the prevailing party in a court action ordinarily is not entitled to an attorney’s fee award to be paid by the losing party. Key Tronic Corp. v. United States, 511 U.S. 809, 814-15, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (internal quotation marks omitted).

. 49 U.S.C. § 14708(b)(6) states, in relevant part (emphasis added): "If the dispute involves a claim for more than $5,000 and the shipper requests arbitration, such arbitration shall be binding on the parties only if the carrier agrees to arbitration."
The meaning of this provision is not before us, and we express no opinion as to it. We cite it only to , question the carriers’ assertion that Section 14708 as a whole plainly demonstrates a legislative intent to encourage arbitration above other considerations.